IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Ann Pincelli, | ) | C/A No.:  3:23-cv-3548-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | (ERISA) |
| Reliance Standard Life Insurance Company and Aflac Employee Health and Welfare Benefits Plan, | ) | |
| | ) | (Non-jury) |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Ann Pincelli ("Plaintiff"), complaining of Defendants Reliance Standard Life Insurance Company ("Reliance Standard") and Aflac Employee Health and Welfare Benefits Plan ("the Plan") (hereinafter, collectively "Defendants"), respectfully shows unto this honorable Court the following:

## NATURE OF THE ACTION

1.     This lawsuit stems from a wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Plaintiff began working for Aflac in 2011 as an account implementation coordinator. (Admin. R. 52.)[1] She rose through the ranks to become a star performer. On April 11, 2019, though, Plaintiff filed for leave under FMLA due to extreme stress and work overload. (Admin. R. 54). Plaintiff was diagnosed with high blood pressure, major depressive disorder, generalized anxiety disorder, and adjustment disorder with depressed mood and anxiety.

---

[1] For ease of reference, citations to the Administrative Record will be indicated as "Admin. R. [page number]."

1

Despite Plaintiff's credibility and medical documentation from her treating physicians that support her disabling conditions, Defendants have wrongfully denied Plaintiff all monthly ERISA long-term disability ("LTD") benefits. As a result, Plaintiff has incurred financial distress, and Plaintiff now seeks back benefits, clarification of rights to future benefits, prejudgment interest, attorney's fees and costs incurred in prosecuting this action, and other equitable remedies from the Defendants for their wrongful denial of benefits as this Court deems just and proper.

## **VENUE AND JURISDICTION**

2. Plaintiff is a citizen and resident of Richland County, South Carolina.

3. Plaintiff was employed by Aflac Inc. on or about August 8, 2011.

4. As an Aflac employee, Plaintiff was eligible to and did participate in certain employee group welfare benefit plans sponsored by Aflac.

5. Aflac provided group long-term disability ("LTD") benefits to eligible employees through the Aflac Employee Health and Welfare Benefits Plan.

6. The Plan was fully insured by Defendant Reliance Standard.

7. The Plan is an employee welfare benefit plan as defined by ERISA, 29 U.S.C. §§ 1002(1) and 1132(d)(a) *et seq*.

8. Plaintiff was a participant in the Plan at all times relevant to her claim for LTD benefits described herein.

9. Defendant Reliance Standard acts as the insurer, claims administrator, and a fiduciary for the Plan at issue in this lawsuit.

10. Reliance Standard is incorporated in Illinois and does business in South Carolina.

11. Reliance Standard is a member of the Tokio Marine Group. Tokio Marine Holdings, Inc. is the holding company of the Tokio Marine Group, which is incorporated in Japan.

12. Reliance Standard is not registered by the South Carolina Secretary of State's Office to do business in our state.

13. Plaintiff was eligible to receive LTD benefits under the Plan after she became disabled, as that term is defined by the Plan.

14. Defendants have refused to provide the LTD benefits due to Plaintiff.

15. Defendants' refusal to provide these LTD benefits was wrongful.

16. This Court has federal question jurisdiction over this matter since it alleges causes of action arising out of an ERISA-governed employee welfare benefit plan. 29 U.S.C. § 1132(e)(1).

17. Venue is proper in this district as the Plan was administered to Plaintiff in Richland County, South Carolina, where she resides and where she worked. 29 U.S.C. § 1132(e)(2).

## FACTS

18. Plaintiff is 66 years old as of the date of this Complaint. (Admin. R. 13.)

19. When Plaintiff began working for Aflac in 2011, she worked as an account services coordinator, where she supported seven managers and handled 500 cases. (Admin. R. 55.)

20. She was later promoted to account implementation coordinator. As account implementation manager, Plaintiff supported the enrollment of almost 500 groups, some as large as 250,000 employees but was the sole contact for these enrollments with both the companies and the Aflac brokers/sales team that brought the business.

21. On or about February 8, 2019, Aflac transferred Plaintiff to the position of account service coordinator. Plaintiff's job duties then entailed being an account enrollment contact for complex accounts, acting as a liaison to coordinate enrollment preparation, execution, and configuration of electronic enrollment platforms and contingent details, communicate with clients to resolve enrollment issues, supporting business units in processing new business in a timely fashion, updating account profiles, coordination and production with internal business partners of custom marketing materials, and any other duties as required. (Admin. R. 75).

22. Plaintiff participated in Aflac's employee group welfare benefit plan (Group Policy No. LTD 121345), which made available LTD benefits to eligible Plan participants. (Admin. R. 87.)

23. Reliance Standard both insures and adjudicates claims made under the Plan. (Admin. R. 87.)

24. On April 11, 2019, Plaintiff filed for leave under FMLA due to extreme stress and work overload that caused debilitating anxiety, exacerbated Plaintiff's depression disorder, and caused her blood pressure to spike to dangerous levels. (Admin. R. 50.)

25. Plaintiff was diagnosed with high blood pressure, major depressive disorder, generalized anxiety disorder, and adjustment disorder with depressed mood and anxiety. (Admin. R. 64.)

26. In the emergency room on March 27, 2019, Plaintiff's blood was 190/120 at one point. (Admin. R. 177).

27. Due to Plaintiff's diagnoses, she would often get brain fog, have mood swings, feel overwhelmed, have issues with memory, and continued increase in blood pressure. (Admin. R. 22; 162.)

28. Plaintiff has tried nearly every conceivable treatment available to mitigate the effects of her impairments, including several different medications, continued therapy sessions, change in diet, and exercise. (Admin. R. 162-3.)

29. Plaintiff's physician, Dr. Ornelas, repeatedly suggested that Plaintiff needed a 30 percent reduction in workload and that her impairments disabled her from returning to her existing job. (Admin. R. 163-4.)

30. Plaintiff's escalating conditions have rendered her unable to return to work. (Admin. R. 162.)

31. Plaintiff has not worked since on or about April 10, 2019.

32. Plaintiff made a claim for benefits under Defendants' short-term disability ("STD") plan. (Admin. R. 82.)

33. Plaintiff's FMLA leave through Aflac expired on June 10, 2019.

34. One or more of Defendants approved Plaintiff's claim for short-term disability benefits until June 19, 2019. (Admin. R. 82.)

35. Plaintiff asked for and Aflac granted an extension of FMLA through June 24, 2019.

36. Plaintiff sought additional leave from Aflac as an accommodation under the Americans with Disabilities Act and was denied.

37. Aflac denied Plaintiff additional leave because it deemed a 30 percent caseload reduction as not being a reasonable accommodation.

38. On August 5, 2019, Aflac listed Plaintiff's job on Indeed.com.

39. Plaintiff timely filed a claim for LTD benefits from Defendants. (Admin. R. 45.)

40. Between August and November 2019, Plaintiff tries very hard to return to work at Aflac. Plaintiff applies internally for Aflac jobs as a corporate recruiter, an employee advocate, document control management, senior enrollment compliance coordinator, client manager, products compliance, products implementation and advertising compliance, product compliance analyst, account services coordinator, and Aflac non-selects her because it is unable to find any jobs to meet her accommodations.

41. Effective November 30, 2019, Aflac terminated Plaintiff's employment.

42. Defendants have wrongfully denied Plaintiff all LTD benefits since she became eligible on July 11, 2019. (Admin. R. 45.)

43. Reliance Standard first denied Plaintiff's claim for LTD benefits by letter dated September 19, 2019. (Admin. R. 45.)

44. Reliance Standard based its denial on the grounds that they determined that Plaintiff "retain the ability to perform the material duties of [her] occupation," thus she was not "totally disabled." (Admin. R. 45.)

45. Reliance Standard's September 19, 2019, denial letter defines "Total Disability" as

> ""Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
>
> (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation"
>
> 2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis. If an Insured is employed by you and requires a license for such occupation, the loss of such license for any reason does not in and of itself constitute "Total Disability". (Admin. R. 45.)

6

46. However, Reliance Standard's conclusion that Plaintiff is able to perform the material duties of her occupation on a full-time basis runs counter to the conclusions reached by Plaintiff's treating physicians and by Aflac.

47. Plaintiff's psychiatrist, Dr. Ornelas, diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and adjustment disorder. Dr. Ornelas requested that Plaintiff's caseload be lowered and indicated that the stress from her excessive case load was affecting her ability to perform. (Admin. R. 161-5.)

48. Reliance Standard's conclusion also contradicts the conclusions reached by Plaintiff's primary care physician, Dr. Deschamps, after completing a physical assessment report of Plaintiff per Reliance Standard's request, concluded that Plaintiff continues to have severe problems with an increase of anxiety and depression and also suffers with elevated blood pressure.

49. Further, it was reported that many of Plaintiff's anxiety and depression issues began after her caseload reached 400 plus cases, which is beyond the normal caseload. Defendants' unrealistic work expectations put Plaintiff in a stressful situation, which affected her anxiety and depression. (Admin. R. 193.)

50. Plaintiff appealed this decision on or about March 23, 2020.

51. Additional medical evidence was included in the Administrative Record during Plaintiff's appeal, including a narrative statement from Plaintiff's psychiatrist, who indicated that Plaintiff continues to be depressed and anxious due to stress triggers in her life and "when placed in a stressful environment she has difficulty with self-esteem and completion of tasks due to past work experiences and expectations." (Admin. R. 193.)

52. Despite the direct medical assessments included in the Administrative Record supporting Plaintiff's claim of disability, Reliance Standard mailed a final denial letter dated July 21, 2020 (received August 4, 2020), citing that "no impairing symptoms" were documented, thus Plaintiff did not meet the definition of Total Disability.

53. Reliance Standard's denials were based largely on the opinions of a third-party medical reviewers it hired to assess Plaintiff's disability claim. The opinions espoused by the reviewers contradict direct reports taken by Plaintiff's medical providers. The reviewers were not independent. Rather, they were operating under a conflict of interest.

54. For example, Nicole Joyce, LCSW, one of the medical reviewers paid to assess Plaintiff's claim, notes in her August 5, 2019, report that Plaintiff's "worsening anxiety and depression symptoms appear linked to job setting." Despite this finding, she concedes that Plaintiff did not have "global impairment that would preclude [Plaintiff] from work function." (Admin. R. 13.)

55. Plaintiff's physicians also repeatedly noted that her symptoms were related to work environment and expectations and suggested that her workload be reduced to decrease her symptoms. (Admin. R. 164.)

56. Plaintiff's physicians have noted that Plaintiff's symptoms included loss of concentration, dizziness, negative effects to self-esteem, and fatigue. (Admin. R. 162.)

57. For some symptoms, Plaintiff produced the only type of evidence a claimant in her situation could produce: her own narrative description of the severity of her symptoms, and her treating physicians' opinions that the anxiety and fatigue rendered her unable to work. As the Plan contains no provision precluding Plaintiff or her physicians from relying

on these complaints to evidence disability, Reliance Standard cannot reasonably deny her claim because of such reliance.

58. In short, Reliance Standard's denials fail to explain how the conclusions reached by its paid medical consultants create any significant reason to doubt the correctness of the opinions offered by Plaintiff's own physicians.

59. As a result of Defendants' wrongful denial of benefits, Plaintiff has suffered substantial financial loss from having to use savings to support herself, and has been forced to incur significant legal fees, costs, and expenses to secure her rightful benefits.

60. Plaintiff remains unable to work her own occupation.

61. Plaintiff fully exhausted all administrative remedies.

**FOR A FIRST CAUSE OF ACTION**
(For benefits, taxable costs, interest, and attorney's fees
Pursuant to ERISA,
29 U.S.C. §§ 1132(a)(1)(B) and (g))

62. Plaintiff incorporates all the preceding paragraphs of this Complaint as if fully set forth in this section.

63. Plaintiff is disabled, as that term is defined by the Plan.

64. Plaintiff timely made a claim for LTD benefits pursuant to the Plan. (Admin. R. 45.)

65. Defendants' denial of benefits was unreasonable under ERISA, 29 U.S.C. § 1132 (a)(1)(B) for one or more of the following particulars:

  a. Reliance Standard has a structural conflict of interest as it insures the Plan and adjudicates claims for benefits made under it;

  b. Reliance Standard's denial letters constitute a failure to provide Plaintiff a specific reason for Defendants' denial of benefits to Plaintiff;

  c. The opinions espoused by Reliance Standard's paid medical reviewers—that Plaintiff can perform the material functions of her job—directly contradict the substantial evidence in the Administrative Record, including medical conclusions from Plaintiff's treating physicians and her employer, Aflac;

  d. Reliance Standard's paid medical reviewers were not independent;

  e. Reliance Standard's paid medical reviewers were operating under a conflict of interest; and/or,

  f. Reliance Standard improperly imposed an evidentiary standard not required under the Plan for Plaintiff and her providers to document the validity of her disability.

66. Plaintiff timely appealed and exhausted her administrative remedies.

67. As a result of Defendants' unreasonable denial of benefits, Plaintiff has been forced to incur significant legal fees, costs, and expenses to secure her rightful benefits.

68. Defendants have the ability to satisfy an award of attorney's fees under 29 U.S.C. § 1132(g), and awarding Plaintiff reasonable attorney's fees would not be a hardship on Defendants.

69. Awarding attorney's fees would likely deter any continued mismanagement and mishandling of claims for benefits from this Plan so as to prevent this type of situation from occurring to the many other participants in Defendants' Plan, who are eligible for similar benefits and would suffer substantial hardships in seeking remedy.

70. Awarding Plaintiff reasonable attorney's fees is part of the legislative intent of Congress expressed in 29 U.S.C. § 1001(b) in that ERISA was enacted to protect the

interest of welfare plan participants by providing for appropriate remedies and sanctions when ERISA or benefit plans subject to it are violated.

71. Based upon the foregoing, Plaintiff is entitled to an Order declaring the existence of her entitlement to two years of LTD benefits under the Plan; an Order requiring Defendants to provide said LTD benefits; to an Order granting Plaintiff reasonable attorney's fees, prejudgment interest, costs, expenses incurred in connection with this lawsuit pursuant to ERISA, 29 U.S.C. Section 1132(g)(1); and for such other equitable relief as this Court deems just and proper.

**WHEREFORE,** having fully stated her Complaint against the Defendants, Plaintiff prays for a declaration of entitlement to two years of long-term disability benefits pursuant to 29 U.S.C. §1132(a)(1)(B), attorney's fees and costs pursuant to 29 U.S.C. § 1132(g), and such other and further relief as this Court deems just and proper, including but not limited to pre-judgment interest.

Respectfully submitted,

/s Nekki Shutt
Nekki Shutt (Fed. Bar No.:6530)
BURNETTE SHUTT & MCDANIEL, PA
Post Office Box 1929
Columbia, South Carolina 29202
Tel.  (803) 904-7912
Fax  (803) 904-7910
Nsutt@BurnetteShutt.law

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

July 21, 2023